UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA ANN JONES,

           Plaintiff,           Civil Action No. 23-10158

v.                                   F. Kay Behm
                                   United States District Judge

U.S. POSTAL SERVICE, *et al.*,      David R. Grand
                                   United States Magistrate Judge

           Defendants.
_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTIONS TO DISMISS (ECF No. 16, 24)

*Pro se* plaintiff Vanessa Ann Jones ("Jones") filed a 42 U.S.C. § 1983 complaint against several groups of defendants: (1) the United States Postal Service ("USPS") and its employees Ronnie Blackshear, Mariyam Kareem, Ronald Morris, and Chynita Evans (collectively, the "USPS Defendants"); (2) Arbitrator Betty Widgeon ("Widgeon"); and (3) American Postal Workers Union ("APWU") representatives Keith Combs and Tony Friday (collectively, the "APWU Defendants"). In short, Jones claims that the USPS Defendants unlawfully terminated her employment as a window clerk for the USPS after she was falsely accused of misappropriating a money order. Jones also claims that the APWU Defendants and Arbitrator Widgeon did not ensure a fair process during her arbitration proceedings concerning her termination. (ECF No. 1).[1]

---

[1] The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 8).

On November 20, 2023, arbitrator Widgeon filed a motion to dismiss (ECF No. 16), which has been fully briefed (ECF Nos. 22, 23).  On December 22, 2023, the USPS Defendants filed their own motion to dismiss (ECF No. 24), which has also been fully briefed (ECF Nos. 28, 32).

The Court finds that oral argument will not aid it in resolving the motions, and declines to hold a hearing.  *See* E.D. Mich. LR 7.1(f)(2).

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that arbitrator Widgeon's Motion to Dismiss **(ECF No. 16)** be **GRANTED**, and the USPS Defendants' Motion to Dismiss **(ECF No. 24)**, be **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

## II.   REPORT

### A.   Background

In her complaint, Jones essentially provides a narrative of events that took place between June and August of 2020 that ultimately resulted in her termination from the USPS.  Although Jones takes issue with the events surrounding her termination, it is somewhat unclear what specific claims she is raising against the defendants in this case.

Jones alleges that, on June 10, 2020, acting manager Ronnie Blackshear asked her whether she "cash[ed] a money order for $155.35" on March 20, 2020.  (ECF No. 1, PageID.6).  When Jones replied that she did not know and would have to see the money order, Blackshear stated that she would be "under investigation." (*Id.*).  She alleges that Blackshear "never bro[ught] the papers to prove these things happened," and instead told

her that she "had to pay the money back." (*Id.*). Jones asked Blackshear why "the other clerk" was not also being questioned when Jones "left work" at 3:30 p.m., but the "window closes" at 5:00 p.m. (*Id.*). Jones also allegedly stated, "Closing Supervisor has to sign out why aren't their name on this?" (*Id.*). Despite her denial of cashing the money order, Jones alleges that, sometime in the month of June 2020, Blackshear "took [her] off window [duty] and told [her] [she] had to work the floor." (*Id.*).

Later, on August 21, 2020, Jones alleges that Blackshear gave her a "letter of removal" but otherwise "no paper work [sic] was given." (*Id.*). Jones alleges that when she "asked for Union Representation," Blackshear told her that she "do[es]n't need one." (*Id.*). Moreover, she alleges that on her "last check" in August 2020, the USPS "took the money out of [her] check." (*Id.*). Jones alleges that during the 30 years she worked at the USPS, she had "never been accused of anything." (*Id.*).

It appears that Jones left the USPS building at some point, as she alleges that "Tony Friday," her "Union Rep," told her that she "should have stayed inside" and that "[t]hey don't operate the same as in Plant." (*Id.*). Friday told Jones that they wanted to fire her, and she asked him to "fight for [her] job." (*Id.*). Union "President" Keith Combs allegedly told her that "they want you out because of your age," to which Jones replied that "[a]ll they had to do is ask if I wanted to retire," but to "falsely accuse" her was a "defamation of character." (*Id.*, PageID.6-7). She alleges that "[t]he money order they used wasn't a money order from my money orders" because a "person wrote out this money order," but "you can't write out a money order[,] it has to be generated from the machine." (*Id.*, PageID.7).

3

Jones alleges that, at some point before her termination, "Mr. C," the "supervisor," asked Jones for her password, and she gave it to him because he was her supervisor. (*Id.*). Sometime later, supervisor Kareem called Jones into her office and said that she would be writing Jones up because Jones' "draw[er] was short $500." (*Id.*). Jones asked how Kareem would know her drawer was short, as Kareem "never counted my drawer," she "never gave me cash," and "she couldn't even change money for me." (*Id.*). When Jones asked Kareem to see the receipt, the receipt said it was "Clerk 31," but Jones was Clerk 29. (*Id.*). After that, Kareem "dropped it," but the next day, Blackshear approached Jones and brought up the issue with the money order. (*Id.*).

At one point, Jones called Mrs. Evans, the "c-som," and told her what happened, but Evans "did nothing." (*Id.*). Jones also spoke to the Acting Postmaster, but he "said nothing." (*Id.*). The USPS told her she had to "bid out." (*Id.*). She alleges that the Accounting Desk said the money order was cashed on April 3, 2020, and supervisor Valerie Gardener confirmed that Jones was "on vacation" that day. (*Id.*). Jones also alleges that she "took a picture of [her] money order," and "it looked nothing like the one they had," including that there was no Postal Eagle on the money order. (*Id.*). Jones claims that the "Postal Inspectors did nothing," that this money order issue "never happened," and that the Union did not provide her with an attorney or national representative at the arbitration proceedings. (*Id.*). Based on the above allegations, Jones seeks, among other things, the reinstatement of her job, lost wages, and monetary damages. (*Id.*, PageID.8).

The USPS Defendants and arbitrator Widgeon have each filed a motion to dismiss. Defendant Widgeon argues that she is entitled to arbitral immunity on any of Jones' claims

4

against her that arise out of her presiding over Jones' arbitration proceeding. (ECF No. 16). The USPS Defendants argue that, to the extent Jones' complaint can be construed as raising defamation and employment discrimination claims, they are due to be dismissed for failure to state a claim and/or under sovereign immunity. (ECF No. 24).

**B.    Standards of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints

5

still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

C.     **Analysis**

**<u>Defendant Widgeon's Motion to Dismiss (ECF No. 16)</u>**

In her motion, defendant Widgeon, who presided over the arbitration proceedings between Jones and the USPS, seeks the dismissal of Jones' claims against her based on "absolute arbitral immunity, which protects her from reprisals by dissatisfied parties like [Jones]" regarding the results of arbitration proceedings. (ECF No. 16, PageID.64-66).

Jones responds that she has a copy of the "real money order and a copy of [the] fake money order," but that arbitrator Widgeon "didn't ask to see proper information," and Jones was not "allowed a witness at case" during the arbitration proceedings. (ECF No. 22, PageID.147). Attached to Jones' response is a copy of what she alleges is the "fake" money order (*id.*, PageID.148), and a customer's receipt of a "real" money order that she "purchased from U.S. Postal Service," which she contends shows "printed" dates, an "Eagle" on the money order, and a Clerk number at the bottom right-hand corner (*id.*, PageID.149).

Widgeon responds that Jones "merely repeats allegations in her Complaint [] but fails to address the jurisdictional arguments raised," and that Jones' "inclusion of certain money orders in her response" fails to "cure the jurisdictional flaws plaguing her pleadings." (ECF No. 23, PageID.150-51).

"[I]t is well-established that someone who conducts an arbitration is protected from being sued to the same extent that a judge is generally given immunity from judicial

6

review." *Hale v. NALC-AFL-CIO Branch No. 3126*, No. 4:22-CV-10300, 2023 WL 3055590, at *6 (E.D. Mich. Apr. 24, 2023); *see Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. & its Locs. 656 & 985 v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1185 (6th Cir. 1983) ("[A]rbitrators have been deemed protected from civil suit under the doctrine of 'arbitral immunity.'"); *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) ("Because federal policy encourages arbitration and arbitrators are essential actors in furtherance of that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction."); *Maynard v. Bel Real Est. Advisors, LLC*, No. 1:23-CV-13084, 2024 WL 1957332, at *4 (E.D. Mich. Apr. 24, 2024) (recommending dismissal "on the ground of arbitral immunity.").

Here, Widgeon is entitled to arbitral immunity on Jones' claims against her, for several reasons. First, Jones' complaint does not raise any direct allegations of wrongdoing against Widgeon. Indeed, the complaint's only allegation that relates to the arbitration at all is Jones' contention that the *APWU* did not provide her with an attorney or a national representative at her arbitration proceedings. (ECF No. 1, PageID.7) ("Union didn't have me attorney at arbitration nor was any national representative present"). Second, in response to Widgeon's motion, Jones asserts that Widgeon "didn't ask to see proper information," and that Jones was not "allowed a witness" at her arbitration. (ECF No. 22, PageID.147). But even if Jones' contentions are true, Widgeon's actions clearly relate to the conducting of the arbitration, which squarely place them within the scope of her duties as the arbitrator over the arbitration proceedings. Thus, Widgeon is entitled to arbitral

7

immunity from Jones' civil claims against her. *Corey*, 691 F.2d 1205 (6th Cir. 1982) ("[I]t is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction.").

For these reasons, arbitrator Widgeon is entitled to arbitral immunity, and Jones' claims against Widgeon should be dismissed.

### **USPS Defendants' Motion to Dismiss (ECF No. 24)**

In their motion, the USPS Defendants argue that Jones "has not properly pled" any legally cognizable claims against them in her complaint, but to the extent "the Court is inclined to construe the complaint to encompass a defamation claim," they are entitled to sovereign immunity because a defamation claim is exempted under the Federal Tort Claims Act. (ECF No. 24, PageID.165-67). They also argue that, despite certain passing references in Jones' complaint, she "never remotely suggests, much less explicitly alleges, that any adverse employment action was taken against her because of her membership in a protected class," and so her complaint cannot be construed as raising an employment discrimination claim based on her termination. (*Id.*, PageID.168-69).[2]

---

[2] The USPS Defendants also argue that Jones "sues the Postal Service and four Postal Service employees," but "[b]ecause Jones does not specify whether the [USPS Defendants] are being sued in their official or individual capacities, it must be assumed that they are sued only in their official capacities." (ECF No. 24, PageID.163). They argue that Jones' official-capacity claims "are properly construed as a claim against the federal entity employing them: the Postal Service," and that claims against the Postal Service are "barred by sovereign immunity." (*Id.*, PageID.163-65).

The Court must address that argument in two parts. First, the USPS Defendants are correct that "absent any indication that [] defendants are being sued individually, [the Court] must assume that they are being sued in their official capacities." *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991). Thus, to the extent Jones purports to assert claims against the individual USPS Defendants, the Court will construe them as being brought against the USPS. Second, while the USPS Defendants are generally correct that Jones' claims are barred by the doctrine of sovereign

8

In response, Jones does not directly address the USPS Defendants' arguments. (ECF No. 28). Rather, she responds only that the "money order wasn't real," that she has "enclosed a copy of a real money order [she] purchased" in November 2023, that "[t]he fake money order [for] which [she] was charged" had "no date on it," and that she "want[s] to see [a] copy of receipt of money order being cashed." (*Id.*, PageID.181).

In reply, the USPS Defendants argue that "[b]ecause Jones has not responded to [their] arguments . . . supporting dismissal, Jones has waived any opposition to those arguments." (ECF No. 32, PageID.188). The Court agrees that Jones' failure to address the USPS Defendants' argument could amount to a forfeiture of her claims. *See Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567 (6th Cir. 2013) (holding that plaintiff's failure to respond to the arguments in defendant's motion to dismiss a claim amounted to a "forfeiture" of such claim). Her arguments regarding a real versus fake money order do not at all address her failure to state a legally cognizable claim against the USPS Defendants.

In any case, to the extent Jones' complaint can be liberally construed as attempting

---

immunity, an exception to the doctrine is where the plaintiff's "suit against a state official seek[s] prospective injunctive relief to end a continuing violation of federal law." *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (citations omitted); *see also Ex parte Young*, 209 U.S. 123 (1908). For example, the Sixth Circuit has generally held that "claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions." *Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 964 (6th Cir. 2013) (quoting *Carten*, 282 F.3d at 396); *Sampson v. Murray*, 415 U.S. 61 (1974) (holding that district court was not without authority to grant a federal employee the injunctive relief she sought against her dismissal from employment with the General Services Administration). Thus, it appears that the doctrine of sovereign immunity would not apply to Jones' request for prospective injunctive relief in which she seeks reinstatement of her job. (ECF No. 1, PageID.8) (stating "Give me my job back" under the "Relief" section of her complaint).

9

to allege a defamation claim or an employment discrimination claim based on wrongful termination against the USPS, such claims fail as a matter of law. As to a defamation claim, the Sixth Circuit has stated that "[w]hen a federal employee commits a tort while acting within the scope of his employment, any private remedy for the tort must be sought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the 'FTCA')." *Rector v. United States*, 243 F. App'x 976, 978 (6th Cir. 2007).[3] While the FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment," *Brownback v. King*, 592 U.S. 209, 211 (2021) (quotations omitted), the Supreme Court has recognized an exemption for "claims based on defamation," stating that "such a suit could not be brought" against the United States under the FTCA, *Siegert v. Gilley*, 500 U.S. 226, 234 (1991). *See also Does 1-10 v. Haaland*, 973 F.3d 591, 595 (6th Cir. 2020) (holding that because "the United States has not waived immunity to libel and slander suits, [a] defamation claim [under the FTCA] could not proceed against the United States."). As such, even if Jones sufficiently alleged a defamation claim, she could not bring it against the USPS under the FTCA, and such claim should therefore be dismissed.

---

[3] Here, the scope of employment is defined under Michigan law. *See Rector*, 243 F. App'x at 978-79 ("[Defendants] were clearly federal employees at all relevant times. . . . However, as noted above, the scope of employment is defined by state law, not federal law."). Under Michigan law, a person acts within the scope of employment if he is "engaged in the service of his master," and "[t]he determinative question is whether the employee's actions are within his authority . . . even if the actions constitute intentional torts." *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990) (citing, among other cases, *Barnes v. Mitchell*, 341 Mich. 7 (1954), and *Ray v. City of Detroit*, 67 Mich. App. 702 (1976)). Jones' complaint describes actions falling squarely within the employees' scope of authority: investigation into a possible misappropriation of a money order, reassignment of work duties pending investigation, and disciplinary actions after the results of the investigation, including termination of employment.

10

As to an employment discrimination claim, Jones appears to suggest that she was terminated from her position based on her age. Specifically, she alleges in her complaint that "[APWU] President Keith Combs said, they want you out because of your age." (ECF No. 1, PageID.6). Such a vague reference to a single statement made by one of her union representatives, particularly without any additional context, falls well short of alleging a valid employment discrimination against the USPS Defendants. *League of United Latin Am. Citizens*, 500 F.3d at 527 (stating that a complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."). Indeed, there are otherwise no allegations that any of the individual USPS Defendants mentioned or considered Jones' age, much less took any actions against her based on her age. As such, as presently alleged, Jones fails to plead sufficient facts to state a wrongful termination claim based on her membership in a protected class.

Nonetheless, given Jones' *pro se* status, the early stage of this case, and her specific allegation that her union president directly told her the USPS wanted to terminate her employment based on her age, the Court finds that it is in the interest of justice to allow Jones a limited opportunity to amend her complaint to cure the present deficiencies **as to her employment discrimination claim only.** *See* Fed. R. Civ. P. 15(a)(2) (stating the court should freely grant leave to amend a complaint "when justice so requires."); *Liberty Hyundai, Inc. v. Hyundai Motor Am., Inc.*, No. 23-CV-10214, 2023 WL 6556023, at *1 (E.D. Mich. Apr. 5, 2023) (allowing plaintiff an opportunity to file an amended complaint after defendant filed its motion to dismiss because "under the present circumstances," it "serves the ends of justice."); *Mclaren Health Care Corp. v. Gartner, Inc.*, No. 2:21-CV-

11

12598-TGB, 2021 WL 9629475, at *1 (E.D. Mich. Dec. 21, 2021) (same). The USPS Defendants also note in their motion that they "cannot reasonably formulate all defenses it may have to an employment discrimination claim without more information about the claims Jones intends to assert, if any," based on her failure to comply with "Rule 8(a)(2)'s pleading requirement" (ECF No. 24, PageID.169, n.4), but the Sixth Circuit has instructed that "if a complaint violates Rule 8, the appropriate remedy is rarely immediate dismissal." *Kensu v. Corzion, Inc.*, 5 F.4th 646, 652-53 (6th Cir. 2021).

As such, the Court finds that the most appropriate course of action here is to (1) deny without prejudice the USPS Defendant's motion to dismiss Jones' employment discrimination claim and grant their motion as to all other claims against them; and (2) give Jones 30 days to file an amended complaint limited to her employment discrimination claim.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that:

- Arbitrator Widgeon's Motion to Dismiss **(ECF No. 16)** be **GRANTED**;

- The USPS Defendants' Motion to Dismiss **(ECF No. 24)** be **DENIED WITHOUT PREJUDICE** as to Jones' employment discrimination claim, and **GRANTED** as to all other claims against the USPS Defendants; and

- Jones be given **30 days** to file an amended complaint to cure any deficiencies as to her employment discrimination claim.

Dated: June 25, 2024  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 25, 2024.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager